UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    B & P BAIRD HOLDINGS, INC.,
f/k/a King Par Corp.,

        Debtor.
_____/

B & P BAIRD HOLDINGS, INC. and
WILLIAM J. BAIRD,

        Appellants,

v

JAMES W. BOYD, *Chapter 7 Trustee*,
IZZO GOLF, LLC, YOUNG BASILE
HANLON MACFARLANE &
HELMOLDT, P.C., HAUSWIRTH
MONCRIEF, PLLC, and KING PAR,
LLC,

        Appellees.
_____/

Case No. 1:12-cv-32

HON. JANET T. NEFF

## OPINION

      Appellant B & P Baird Holdings, Inc., a corporate Chapter 7 debtor (the "Debtor"), formerly known as King Par Corp., and its shareholder, Appellant William J. Baird ("Mr. Baird"), appeal a decision of the Bankruptcy Court finding that neither the Debtor nor Mr. Baird had standing to object to claims and proposed settlements between the trustee and various creditors and litigants against the estate. *See In re B & P Baird Holdings, Inc.,* No. DT 10-10941 (Bankr. W.D. Mich.

Nov. 22, 2011) (Dkt 9-22); Dec. 16, 2011 Omnibus Order (Dkt 9-4). Having reviewed the record and fully considered the parties' briefs, the Court affirms the decision of the Bankruptcy Court.[1] *See* FED. R. BANKR. P. 8013.

## I. Background[2]

This appeal stems from a Chapter 7 bankruptcy proceeding commenced in September 2010 by the Debtor, a designer, manufacturer, and seller of golf equipment, after Appellee Izzo Golf prevailed in a golf-bag patent infringement action against the Debtor in the Western District of New York, resulting in a jury verdict of $3,286,476.65. Mr. Baird was the president and majority shareholder of the Debtor. Based on the jury's finding that the Debtor willfully infringed Izzo Golf's patent, Izzo Golf sought a determination of prejudgment interest, statutory enhancements, and an award of attorney fees.

Prior to the bankruptcy filing, on June 4, 2009, the Debtor entered into an Asset Purchase Agreement, selling substantially all of its assets to Appellee King Par, LLC ("New King Par"). Consideration for the sale was directed to the Debtor's owners (William and Pamela Baird) personally. New King Par liquidated the Debtor's remaining receivables and, with the proceeds, paid any remaining payables. Izzo Golf subsequently commenced an action against the Bairds seeking to set aside the asset sale. In response, the Debtor obtained a stay with the filing of the Chapter 7 bankruptcy case. On March 14, 2011, Izzo Golf filed a proof of claim with the

---

[1]Having examined the briefs and record, the Court determines that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." *See* FED. R. BANKR. P. 8012.

[2]This background is in large part gleaned from the parties' briefs and is not intended as a definitive statement or resolution of any disputed facts in the bankruptcy proceedings.

bankruptcy court for $12,052,367.08, which included judgment interest, statutory enhancements on the willful finding, and attorney fees.

Following the asset purchase sale, the Debtor was left essentially with only liabilities. The Debtor's only "assets" in the bankruptcy schedules were claims against New King Par for unpaid receivables, against its trial attorneys R. Jamison Williams and Appellee Young, Basile, Hanlon, MacFarlane & Helmholdt, P.C. ("Young Basile") for malpractice, and against William and Pamela Baird for the fraudulent transfer of Debtor's assets. The Chapter 7 trustee's counsel investigated the claims, defenses, and potential offsets, and ultimately entered into tentative settlement agreements on certain claims, subject to court approval.

Despite the lack of hard assets in the estate, the Debtor and Mr. Baird filed objections to various claims asserted by creditors of the bankruptcy estate, and objected to settlements between those creditors and the trustee. On October 14, 2011, the Debtor and Mr. Baird, individually, filed an objection to Izzo Golf's claim. Additionally, they objected to the motions to approve the trustee's settlement with New King Par and Young Basile.

At a hearing on November 16, 2011, the bankruptcy court made a factual finding that the Debtor and Mr. Baird, individually, lacked standing to object to proofs of claim, or the proposed settlements, on the ground that a surplus was unlikely after the payment of all allowed claims, and thus they each lacked a pecuniary interest in the proceeding. The court later granted the trustee's motion to settle with New King Par.

On November 22, 2011 the bankruptcy court entered a written opinion supplementing its prior oral ruling. The bankruptcy court found that neither the Debtor nor Mr. Baird had established a reasonable possibility of a surplus to support standing to be heard with respect to at least two

contested matters before the bankruptcy court: (1) the Chapter 7 trustee's motion to approve a settlement that he reached with King Par, LLC; and (2) the Debtor's objection to the claim of Izzo Golf, Inc. (Suppl. Op., Dkt 9-22 at 1). On December 16, 2011, the bankruptcy court entered an Omnibus Order (Dkt 9-4) effectuating its rulings. The Debtor and Mr. Baird now appeal.

## II. Legal Standards

On appeal to this Court from a bankruptcy court's final order or judgment, the bankruptcy court's conclusions of law are reviewed de novo while findings of fact are reviewed under the clear-error standard. *B-Line, LLC v. Wingerter (In re Wingerter),* 594 F.3d 931, 935-36 (6th Cir. 2010). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013. "'[A] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985) (citation omitted). The district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. FED. R. BANKR. P. 8013.

The determination of whether a reasonable surplus may exist is a question of fact, and thus subject to this Court's clearly erroneous review. *See In re Cult Awareness Network, Inc.,* 151 F.3d 605, 608 (7th Cir. 1998).

## III. Analysis

Appellants argue that the bankruptcy court erred in concluding that neither the Debtor nor Mr. Baird, its shareholder, "have standing to object to the claims of Izzo Golf and all other creditors

and the complained of settlements …" since standing has been established by virtue of the pecuniary interest each has in the matter (Dkt 18 at 14). This Court disagrees and finds no basis for reversal of the bankruptcy court's decision.

The controlling legal principles for determining standing before the bankruptcy court are not in dispute. The Bankruptcy Code provides that "'[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, ... objects.'" *Morton v. Morton (In re Morton),* 298 B.R. 301, 305 (6th Cir. BAP 2003) (quoting Bankruptcy Code § 502(a)). The phrase "party in interest" "'is generally understood to include all persons whose pecuniary interests are[] directly affected by the bankruptcy proceedings.'" *Id.* at 306 (citations omitted). Thus, as Appellants acknowledge, generally, a party must have a "pecuniary interest" in the outcome to have standing to object to claims (Dkt 18 at 7). *See In re Rake,* 363 B.R. 146, 151 (Bankr. D. Idaho 2007) ("if a debtor lacks a pecuniary interest in the distribution of assets of an estate, he lacks standing to object to a trustee's proposed settlement").

As the bankruptcy court observed, in this case, if there was no surplus in the estate, there would be no distribution to the Debtor (or, derivatively, Mr. Baird), and therefore they would lack a pecuniary interest in the proceedings (Suppl. Op., Dkt 9-22 at 2, citing, *e.g., In re Morton,* 298 B.R. at 307). "Unless the debtor can show that the estate is a surplus estate that would yield a dividend to [the] debtor or that disallowing the claim would produce a surplus to which the debtor would then be entitled, the debtor lacks standing to contest the claim." *In re Olsen,* 123 B.R. 312, 313 (Bankr. N.D. Ill. 1991)).

The Debtor and Mr. Baird bore the burden of proving, with evidence, the existence of a "reasonable possibility of a surplus after satisfying all debts …." *See In re Nangle,* 288 B.R. 213,

216 (8th Cir. BAP 2003). "[A] debtor must show the requisite pecuniary interest and 'cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such a surplus is a reasonable possibility' by introducing evidence from which the court could make such an inference." *In re Rake,* 363 B.R. at 151 (quoting *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.),* Nos. 97 C 80, 97 C 416 and 95 B 22133, 1997 WL 327123, at * 2 (N.D. Ill. May 27, 1997).

Appellants argue that the bankruptcy court did not afford them the opportunity to argue the existence of a surplus (Dkt 18 at 8). To the contrary, the bankruptcy court provided ample opportunity for Appellants to show the requisite pecuniary interest. The bankruptcy court directed briefing and affidavits to be filed on this issue, and after full briefing and extensive oral argument, the bankruptcy court gave a ruling from the bench explaining the reasons for rejecting Appellants' standing. The bankruptcy court amplified its oral ruling in a thoroughly reasoned supplemental written opinion.

Appellants further argue that Mr. Baird[3] has a direct pecuniary interest in this matter by virtue of his individually funding an escrow account of $3.5 million, set aside specifically for the purposes of recovery in the adversary proceeding. They cite case law purportedly supporting "the proposition that under certain circumstances, those parties with something to lose financially are given a heightened recognition for standing purposes" (Dkt 29 at 2). Appellees point out, however, that the escrow money cannot be attributed to the bankruptcy estate since it belongs to the Bairds

---

[3]The bankruptcy court noted that Mr. Baird's rights as a shareholder, which give him merely an indirect interest in this matter, further calls into question his purported standing. However, given the ultimate finding that the estate would have no surplus, the bankruptcy court found it unnecessary to consider this aspect of Mr. Baird's standing (Suppl. Op., Dkt 9-22 at 3 n.2).

personally. In any event, as discussed below, there is no evidence that any monies or claims would result in a surplus in the estate to support a pecuniary interest on the part of Mr. Baird. This Court finds the case law cited by Appellants inapposite. Contrary to Appellants' assertions, Mr. Baird's purported contractual rights to pursue causes of action against a number of the parties is immaterial to the standing analysis and was not improperly disregarded by the bankruptcy court.

Appellants argue that the trustee's amended count, Count V, "seeking to confer conversion damages, and making the Bairds the true pecuniary party in interest to the adversary proceeding brought by the trustee," itself establishes the estate's solvency, and thus, the Debtor's standing (Dkt 18 at 9). The bankruptcy court thoroughly considered and properly rejected this argument on several grounds. The bankruptcy court observed that the merits of Count V were profoundly doubtful, and in any event, amounted to an extraordinary equitable remedy that the bankruptcy court would not lightly impose (Suppl. Op., Dkt 9-22 at 4). Even more fatal to this argument is that through Count V, the trustee was seeking only declaratory relief to the effect that any of the Bairds' assets needed to pay claims, would be made available to the estate (*id.*). Given the declaratory nature of the claim, the Debtor could never benefit from any such recovery, and further, the bankruptcy court would cap any actual recovery to the amount of allowable claims and administrative expenses, so there could be no surplus (*id.* at 4-5).

The schedules and other evidence in this case established that any assets of the estate take the form of "soft assets," i.e., causes of action and avoidance powers (*id.* at 5).[4] The bankruptcy court properly found that from a realistic and practical standpoint, even considering the remote

---

[4] The bankruptcy court noted that the Debtor, by its own admission, had no assets, nor would it ever again have any assets ((Suppl. Op., Dkt 9-22 at 5).

possibility of any recovery by the trustee, the claims against the estate of at least $3.2 million by Izzo Golf and $791,000 by other creditors, "establish[ed] beyond peradventure that there is no reasonable possibility of surplus under 11 U.S.C. § 726 upon which the Debtor or Mr. Baird's standing necessarily depends" (*id.* at 7). The bankruptcy court's reasoning is sound and was properly based on the applicable legal principles and evidence before the bankruptcy court at the time of its decision.

Appellants' arguments in favor of standing fail. Appellants present no argument or evidence that persuades this Court they are entitled to relief on appeal from the bankruptcy court's decision.

IV. Conclusion

The bankruptcy court properly concluded that neither the Debtor nor Mr. Baird had established a reasonable possibility of a surplus to support standing to be heard with respect to the contested matters before the bankruptcy court. The bankruptcy court's decision, set forth in the December 16, 2011 Omnibus Order, is affirmed.

An Order consistent with this Opinion will be entered.


Date: September  28 , 2012              /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge